# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOHN W. WILLIAMS,

                Plaintiff,

    v.

WARDEN K. HARRINGTON,
et al.,

              Defendants.

_____/

1:09-cv-01823-GSA-PC

ORDER DISMISSING FIRST AMENDED COMPLAINT, FOR FAILURE TO STATE A CLAIM  (Doc. 16.)

ORDER GRANTING LEAVE TO AMEND ONLY THE RETALIATION AND POLICY-IMPLEMENTATION CLAIMS

ORDER DISMISSING ALL OTHER CLAIMS

THIRTY-DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT AS INSTRUCTED BY THIS ORDER

## I.      RELEVANT PROCEDURAL HISTORY

John W. Williams ("Plaintiff") is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on October 16, 2009.  (Doc. 1.)  On October 29, 2009, Plaintiff consented to the jurisdiction of a Magistrate Judge, and no other parties have appeared.  (Doc. 6.)  Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

1   The Court screened the Complaint pursuant to 28 U.S.C. 1915A and entered an order on

2   November 22, 2010, requiring Plaintiff to either file an amended complaint or notify the Court of

3   his willingness to proceed on the claims found cognizable by the Court. (Doc. 13.) On January 11,

4   2011, Plaintiff filed the First Amended Complaint, which is now before the Court for screening.

5   (Doc. 16.)

6   **II.    SCREENING REQUIREMENT**

7   The court is required to screen complaints brought by prisoners seeking relief against a

8   governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

9   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

10  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

11  monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

12  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

13  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

14  claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

15  A complaint must contain "a short and plain statement of the claim showing that the pleader

16  is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

17  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

18  do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v.

19  Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). "[P]laintiffs [now] face a higher

20  burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), and while a

21  plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences,"

22  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and

23  citation omitted).

24  To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state

25  a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962,

26  969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility

27  standard. Id.

28  ///

2

### III.    SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at Salinas Valley State Prison ("SVSP") in Soledad, California.  The events at issue occurred at Kern Valley State Prison ("KVSP") in Delano, California, while Plaintiff was incarcerated there.  Plaintiff names as defendants K. Harrington, Warden at KVSP; J. Castro, Associate Warden; M. Biter, Chief Deputy Warden; and T. Billings, Correctional Counselor II ("Defendants").

Plaintiff alleges as follows in the First Amended Complaint.

### *Contaminated Drinking Water*

In April 2005, the California Department of Health Services issued a permit to the CDCR to operate two  water wells at KVSP, the sole supply of drinking water to inmates at KVSP, including Plaintiff.  The permit requires compliance with all statutory and regulatory drinking water requirements.  On April 10, 2008, KVSP was notified by the Department of Public Health that the water wells at KVSP  contained more than the allowed maximum level of arsenic, and on December 12, 2008, KVSP was issued a compliance order for violation.  (Exhs. A and B to First Amended Complaint ("ACP"), Doc. 16 at 41-48.)

Upon his arrival at KVSP on August 12, 2009, after drinking from KVSP's contaminated water wells, Plaintiff immediately "suffered retch, nausea, stomach cramps, pain, and headache." (ACP, Doc. 16 at 5:8-9.)  Plaintiff attributes his illness to elevated levels of arsenic in the water. Between August 12, 2009 and August 27, 2010, Plaintiff was forced to drink contaminated water and consume low levels of arsenic, causing illness and loss of energy.  Plaintiff holds defendants Harrington, Biter and Castro liable for harm to Plaintiff, based on their refusal to comply with the Safe Drinking Water Act.

### *Prison Appeals Process*

On August 21, 2009, Plaintiff submitted an emergency inmate grievance related to the contaminated drinking water, directly to Warden Harrington.  Warden Harrington forwarded the grievance to defendant Billings for processing. Defendant Billings returned the grievance to Plaintiff with an attached notice stating, "Lift on water restriction at Kern Valley State Prison," signed by defendant Billings on August 24, 2009.  (ACP, Doc. 16 at 6 ¶10.)  Plaintiff alleges that defendant

Billings' actions deliberately defied CDCR policy to frustrate Plaintiff's appeal efforts.  On September 9, 2009, Plaintiff returned the grievance to defendant Billings, through Warden Harrington.  Defendant Billings retaliated against Plaintiff by conspiring to deprive him of his rights to appeal, by making a request to Administrator N. Grannis to place Plaintiff on an extended appeal restriction, restricting Plaintiff to one grievance a month for six months.  Defendant Billings falsified information to restrict Plaintiff's appeals concerning the drinking water, in conspiracy with defendants Harrington, Biter and Castro, in an attempt to conceal the fact that the water was contaminated.

After Plaintiff was placed on appeal restriction status, defendant Billings rejected Plaintiff's emergency grievance a second time on or about September 24, 2009, directing Plaintiff to obtain an Informal Level response, despite knowing that the issue could not be resolved in that manner.  When defendant Castro received the grievance, he forwarded it back to defendant Billings who on October 5, 2009 returned the grievance to Plaintiff with notice that the grievance could not be processed due to Plaintiff's appeal restriction.   Plaintiff maintains that the Defendants acted to prevent his exhaustion of remedies and deny Plaintiff access to the courts.

### ***Loss of Prison Job***

Defendants Harrington, Biter and Castro promulgated and implemented a policy which authorized defendant Billings to deliberately block KVSP inmates, including Plaintiff, from challenging deficient policies.  Also, between January and April 2010, defendants Harrington, Biter and Castro ratified a policy which extended preferential treatment to Hispanic inmates at KVSP with respect to job assignments.

In October 2009, Plaintiff was given a prison job assignment as food handler.  On or about March 19, 2010, Plaintiff was admitted into crisis care due to a suicide attempt, and upon discharge from crisis care, Plaintiff learned that his job position had been taken.  Plaintiff wrote to defendant Harrington concerning the loss of his job assignment.  On or about March 30, 2010, Plaintiff was interviewed by defendant Castro's wife, Lieutenant ("Lt.") Castro.  Lt. Castro informed Plaintiff that the policy which took away Plaintiff's job assignment was being imposed to afford Hispanic inmates from Northern California access to job assignments because of prison gang disruptive activity

1  involving Southern Hispanic California inmates.  Lt. Castro also told Plaintiff that he was also

2  rehoused and unassigned "because they don't want people who cut their wrists working in the

3  kitchen."  (ACP, Doc. 16 at 10 ¶20.)  Plaintiff asserts that CDCR policy requires notice and a

4  classification hearing before an inmate is unassigned from a prison job, yet he was not given this due

5  process, violating his rights to equal protection because of his race and mental disability.

6        On May 1, 2010, Plaintiff filed a grievance concerning this dispute, and defendant Billings

7  rejected it as untimely.  Plaintiff returned the grievance explaining that any violation of time

8  restraints was the result of the six-month appeal restriction imposed on Plaintiff by defendant

9  Billings.  The grievance was never processed, responded to, or returned to Plaintiff.

10        ***Policy Decisions***

11        Defendants Harrington, Biter and Castro promulgated and implemented a policy which

12  authorized defendant Billings to retaliate against KVSP inmates, including Plaintiff, by blocking and

13  rejecting inmate grievances based on bogus and arbitrary reasons contrary to CDCR policy, and by

14  placing inmates on appeal restriction to prevent exhaustion of remedies.  In August 2009, when

15  Plaintiff participated in a class-action grievance, represented by inmate D. Boult, against defendant

16  Billings. Defendants Harrington and Biter intentionally frustrated the grievance process until inmate

17  D. Boult was paroled, and then refused to process the class action grievance altogether, so that

18  defendant Billings could continue to use deficient policies.  Defendant Billings learned that Plaintiff

19  had authored the class action grievance, which motivated defendant Billings' retaliatory acts against

20  Plaintiff.

21        On March 13, 2010, Plaintiff filed a grievance concerning defendant Billing's retaliatory

22  schemes.  To ensure that the deficient policies were not disturbed, defendants Harrington and Biter

23  permitted the union representative [for the California Peace Officer Association] to conduct a

24  counterfeit inquiry, finding no wrongdoing by defendant Billings.

25        Plaintiff requests injunctive, declaratory, and monetary relief.

26  ///

27  ///

28  ///

1  **IV.     PLAINTIFF'S CLAIMS**

2       The Civil Rights Act under which this action was filed provides:

3              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the deprivation
4              of any rights, privileges, or immunities secured by the Constitution .
               . . shall be liable to the party injured in an action at law, suit in equity,
5              or other proper proceeding for redress.

6  42 U.S.C. § 1983. "Section 1983 . . .  creates a cause of action for violations of the federal

7  Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

8  (internal quotations omitted).

9       In the Court's first screening order entered on November 22, 2010, the Court found that

10  Plaintiff had alleged facts, liberally construed, stating cognizable claims in the original Complaint

11  against defendants Harrington and Castro for implementation of policy, and defendant Billings for

12  retaliation. (Doc. 13.)  The Court found that Plaintiff had not stated any other cognizable claims in

13  the original Complaint. Id.

14       Now, the Court has thoroughly reviewed the First Amended Complaint and finds that

15  Plaintiff fails to state any cognizable claims in the First Amended Complaint.    Upon review, the

16  Court The Court shall separately address each of Plaintiff's claims.  With regard to Plaintiff's claims

17  for retaliation and unconstitutional policy implementation, the Court used the screening procedure

18  as directed by the Ninth Circuit in Iqbal.  In light of the fact that the Court used a more restrictive

19  standard of review when screening these two claims, Plaintiff shall be granted leave to amend these

20  claims, as discussed below.

21       **A.     Official Capacity**

22       Plaintiff brings this action against Defendants in their official and individual capacities.

23  Plaintiff may not bring suit for damages against Defendants in their official capacities.   "The

24  Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and

25  state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147

26  (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits seeking

27  damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991);

28  Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009).  Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Accordingly, Plaintiff fails state a claim for damages against any of the Defendants in their official capacities, and these claims shall be dismissed.

### B.   Personal Participation and Supervisory Liability

Plaintiff brings allegations against Warden Harrington, Associate Warden Castro, and Chief Deputy Warden Biter, who all hold supervisory positions at KVSP.  Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 129 S.Ct. at 1948-49.

Liability may not be imposed on supervisory personnel under section 1983 on the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct.  Iqbal, 129 S.Ct. at 1948-49; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).  A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, No. 09-55233, 2011 WL 2988827 at *4-5 (9th Cir. July 25, 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Therefore, Plaintiff fails to state any claims against any of the Defendants as merely supervisory personnel, and these claims shall be dismissed.

### C.   Eighth Amendment - Failure to Protect

Plaintiff alleges that Defendants failed to protect him from harm arising from contaminated drinking water.  Although prison conditions may be restrictive and harsh, prison officials must

provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id;
Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246
(9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,
prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk
of serious harm."  Frost, 152 F.3d at 1128.  Thus, a prison official may be held liable under the
Eighth Amendment for denying humane conditions of confinement only if he knows that inmates
face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate
it.  Id. at 837-45.

   "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060
(9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from
which the inference could be drawn that a substantial risk of serious harm exists,' but that person
'must also draw the inference.'"  Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114
S.Ct. 1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the
official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id. (quoting
Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of
medical malpractice or negligence is insufficient to establish a constitutional deprivation under the
Eighth Amendment.  Id. at 1060.  "[E]ven gross negligence is insufficient to establish a
constitutional violation."  Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

   Plaintiff alleges that KVSP's drinking water supply does not comply with the standards for
maximum arsenic contaminant level, and that KVSP was notified of this noncompliance on April
10, 2008 and December 12, 2008.  Plaintiff holds defendants Harrington, Castro, and Biter liable for
failing to comply with the standards and for failing to comply with the Safe Water Act.  However,
Plaintiff fails to allege any facts demonstrating that any of these defendants personally acted with
deliberate indifference.

   Therefore, Plaintiff fails to state any claims against defendants Harrington, Castro, and Biter
for failure to protect Plaintiff from harm caused by contaminated water, and these claims shall be
dismissed.

///

1
## D.    Conspiracy

2   Plaintiff alleges that Defendants conspired under §§ 1983 and 1985 to violate his

3   constitutional rights.

4   ### *§ 1983*

5   In the context of conspiracy claims brought pursuant to section 1983, a complaint must

6   "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v.

7   County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police

8   Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or

9   acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v.

10  State of California, 497 F.2d 197, 200 (9th Cir. 1974).

11  A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting

12  of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

13  (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

14  1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d

15  1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121,

16  1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact

17  details of the plan, but each participant must at least share the common objective of the conspiracy.'"

18  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

19  Plaintiff has not alleged any facts supporting the existence of an agreement or meeting of the

20  minds among Defendants to violate Plaintiff's constitutional rights.  Therefore, Plaintiff fails to state

21  a claim for conspiracy for which relief can be granted under §§ 1983 or 1985 against any of the

22  Defendants.

23  ### *§ 1985*

24  Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state

25  a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any

26  person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators

27  in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any

28  right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir.

1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985.  Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support the allegation that any of the Defendants entered into a conspiracy.  Therefore, Plaintiff fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the Defendants.

Accordingly, Plaintiff's conspiracy claims shall be dismissed.

### E.    Inmate Appeals Process

Plaintiff alleges that all of the Defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. Buckley, 997 F.2d at 495.  Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals, and Plaintiff's claims regarding the inmate appeals process shall be dismissed.

### F.   Denial of Access to Courts

Plaintiff alleges that Defendants frustrated his efforts to file prison grievances and exhaust his administrative remedies when they failed to respond properly to his appeals and restricted him to filing one grievance a month for six months, thus denying him access to the courts.

While Plaintiff has a constitutional right to access the courts, the interferences complained of by Plaintiff must have caused him to sustain an actual injury. Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002) Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009); Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004).  The absence of an injury precludes an access claim, and Plaintiff's First Amended Complaint is devoid of any facts suggesting any injury occurred.  Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.  Therefore, Plaintiff fails to state a claim for denial of access to the courts, and this claim shall be dismissed.

### G.   Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff asserts that defendant Billings thwarted his attempts to file grievances and exhaust remedies by falsifying information to place Plaintiff on restricted appeal status, in retaliation for Plaintiff filing inmate grievances that he had been harmed by KVSP's contaminated drinking water. Plaintiff also alleges that defendants Harrington, Castro and Biter conspired with defendant Billings to interfere with Plaintiff's rights to file grievances because they wanted to conceal the fact that they had not complied with the Safe Water Act, and they wanted to stop Plaintiff from complaining about deficient CDCR policies.

In the Court's November 22, 2010 order screening the original Complaint, the Court found that Plaintiff alleged facts, liberally construed, that defendant Billings had retaliated against Plaintiff by imposing an appeal restriction in response to Plaintiff's filing of an inmate grievance. (Order,

1  Doc. 13 at 6 ¶II.B.)  The Court now screens the retaliation claim using the Iqbal standard as directed

2  by the Ninth Circuit.

3      Under Iqbal, the court is directed to begin the screening analysis by identifying conclusory

4  allegations that are not entitled to the assumption of truth, such as bare assertions and "formulaic

5  recitation of the elements" of a claim.  Iqbal, 129 S.Ct. at 1951.  Plaintiff's statement that "Defendant

6  Billings imposed retribution and retaliation against plaintiff by conspiring to deprive [him] of rights

7  to petition the court for redress of grievance in effort to attempt [to] conceal the contaminated

8  drinking water at CSP-KV" falls into this category.  (ACP at 7 ¶11.)  Here, Plaintiff only recites

9  elements of a retaliation claim and makes a conclusory statement about defendant Billings' purpose

10  in depriving Plaintiff of his rights.  Plaintiff makes other conclusory allegations as well, such as

11  "Defendants Billings, Biter, and Harrington conspired to impose retribution on Plaintiff in retaliation

12  for pursuing a grievance challenging Defendants' violation of the Safe Drinking Water Act" and

13  "Defendant Billings deliberately defyed (sic) this CDCR policy in order to fustrate (sic) Plaintiff's

14  appeal efforts by returning this grievance..."  (ACP, Doc. 16 at 6 ¶10, 8 ¶15.)  Such statements are

15  not entitled to be assumed true.  Iqbal, 129 S.Ct. at 1951.

16      Iqbal next directs the court to "consider the factual allegations in [the] complaint to determine

17  if they plausibly suggest an entitlement to relief."  Id.  The factual allegations are to be taken as true.

18  Id. at 1951.  Here, Plaintiff satisfies the first element of a retaliation claim – an assertion that a state

19  actor took some adverse action against an inmate – when he alleges that Defendants, employees of

20  the CDCR, improperly rejected his grievances and placed him on restricted appeals status, limiting

21  him to one grievance per month for six months.   The third element – that the prisoner engaged in

22  protected conduct – is satisfied because Plaintiff alleges he was attempting to file prisoner

23  grievances, and the Ninth Circuit has long held that filing prison grievances is conduct protected by

24  the First Amendment.  See Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

25      With respect to the second element – that Defendants acted against Plaintiff *because of* his

26  protected conduct – Plaintiff alleges that Defendants interfered with his attempts to file grievances

27  to stop him from bringing attention to KVSP's contaminated water and the CDCR's deficient

28  policies.  However, Plaintiff has not alleged any facts showing a nexus between Defendants'

behavior and the subject matter of his complaints.  Plaintiff cites no behavior or statements by Defendants, no suspect timing, or any other evidence, to plausibly suggest that Defendants took issue with the subject matter of Plaintiff's complaints.  Plaintiff makes only a bare assertion that the supervisory defendants, Warden K. Harrington, Associate Warden J. Castro, and Chief Deputy Warden M. Biter, wanted to conceal the fact that they failed to comply with the Safe Water Act. Plaintiff has not alleged facts to support a reasonable inference that Defendants objected to Plaintiff's grievances because he complained about the water or CDCR's policies.  Plaintiff's own evidence shows that KVSP's water was determined to be safe, and the restriction on drinking the water had been lifted, at the time Plaintiff was filing his appeals.  (ACP, Exh. C.)  Plaintiff's evidence also shows that his appeals were rejected for valid reasons such as untimeliness and failure to obtain an Informal Level review.  To succeed on this claim, Plaintiff must allege facts demonstrating that Defendants' actions did not reasonably advance a legitimate correctional goal.

Assuming that the improper rejection of appeals, and the imposition of a restriction on filing appeals would chill an inmate's First Amendment Rights, Plaintiff has satisfied the fourth element. The fifth element – the action did not reasonably advance a legitimate correctional goal – is also satisfied with respect to the appeal restriction by Plaintiff's allegations, taken as true, that the appeal restriction was imposed on him based on falsified information.

Because Plaintiff fails to satisfy the second element of a retaliation claim under the Iqbal standard, Plaintiff fails to state a cognizable claim against any of the Defendants for retaliation.  In light of the fact that the Court had previously found that Plaintiff stated a claim for retaliation in the original Complaint, but now having reviewed this claim in the First Amended Complaint under the more restrictive Iqbal standard, Plaintiff shall be granted leave to amend the retaliation claim to cure the deficiencies found by the Court.

### H.   Due Process

Plaintiff alleges that Defendants violated his rights to due process when they took away his prison job assignment without notice and a hearing.

The Due Process Clause protects against the deprivation of liberty without due process of law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke the

protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff does not have a liberty interest in his prison job[1], Sandin, 515 U.S. at 484, and Plaintiff does not have a property interest in his job. See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1995). Because Plaintiff has neither a liberty interest nor a property interest in his prison job, he was not entitled to any procedural due process protections in conjunction with his removal from the job. Because Plaintiff fails to establish the existence of a protected liberty or property interest, his due process claim fails as a matter of law and shall be dismissed.

## I.   **Equal Protection**

Plaintiff alleges that Defendants discriminated against him based on his race and mental disability when they took away his job position based on a policy that favored giving jobs to Hispanic inmates, after he was admitted into a crisis care center due to a suicide attempt.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by

---

[1] In Sandin v. Connor, the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. Sandin , 515 U.S. at 481-84. Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. Id. In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. In fact, Plaintiff submits evidence that he lost his job assignment partly "because they don't want people who cut their wrists working in the kitchen," (ACP, Doc. 16 at 10 ¶20), and that the policy for Hispanic inmates was imposed to manage prison gang disruptive activity, (Id. at ¶19), which is evidence of a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection, and this claim shall be dismissed.

### J.     ADA and RA

Plaintiff claims that Defendants violated his rights under the Americans With Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

"Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S.

C. § 794.  Title II of the ADA and the RA apply to inmates within state prisons.  <u>Pennsylvania Dept.</u> <u>of Corrections v. Yeskey</u>, 118 S.Ct. 1952, 1955 (1998); <u>see also</u> <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1023 (9th Cir. 1997); <u>Duffy v. Riveland</u>, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."  <u>Lovell</u>, 303 F.3d at 1052.  "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance."  <u>Id.</u>

"'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'"  <u>Roundtree v. Adams</u>, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting <u>Thomas v. Nakatani</u>, 128 F.Supp.2d 684, 691 (D. Haw. 2000)).  "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  <u>Roundtree</u>, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)).  Public entity, "'as it is defined within the statute, does not include individuals.'"  <u>Id.</u> (quoting <u>Alsbrook v.</u> <u>City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Because individual liability is precluded under Title II of the ADA, any claim Plaintiff might intend to make under the ADA against Defendants, all who are individuals, is not cognizable.  Moreover, in order to state a claim under the ADA and the RA, Plaintiff must show that he qualifies as handicapped within the meaning of the ADA or RA, and has been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap."  <u>Armstrong</u>, 124 F.3d at 1023.  Plaintiff has alleged no such exclusion or denial because of a qualified handicap.  Thus, Plaintiff fails to state a claim under the ADA or the RA, and these claims shall be dismissed.

///

1   **K.    Violation of State Laws**

2       Plaintiff seeks to hold Defendants liable for their violation of state laws, such as CDCR

3   policy and procedures, the Department Operations Manual, and requirements imposed by the

4   California Department of Public Health.

5       Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the

6   CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  To state a claim

7   under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v.

8   Davis, 424 U.S. 693 (1976).  Although the court may exercise supplemental jurisdiction over state

9   law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C.

10  § 1367.

11  **L.    Declaratory and Injunctive Relief**

12      In addition to money damages, Plaintiff seeks injunctive relief and declaratory relief.

13      Plaintiff is currently housed at SVSP, and the past events at issue in this action occurred at

14  KVSP.  When an inmate seeks injunctive relief concerning the prison where he is incarcerated, his

15  claims for such relief become moot when he is no longer subjected to those conditions.  Nelson v.

16  Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995);

17  Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

18      Moreover, any award of equitable relief is governed by the Prison Litigation Reform Act

19  ("PLRA"), which provides in relevant part, "Prospective relief in any civil action with respect to

20  prison conditions shall extend no further than necessary to correct the violation of the Federal right

21  of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief

22  unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct

23  the violation of the Federal right, and is the least intrusive means necessary to correct the violation

24  of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  Based on the nature of the claims at issue in this

25  action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore

26  confined to seeking money damages for the violations of his federal rights.

27      With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable

28  relief, should be granted only as a matter of judicial discretion, exercised in the public interest."

1   Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should

2   be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

3   issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by

4   the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that

5   this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a

6   finding that Plaintiff's constitutional rights were violated.  A declaration that defendant violated

7   Plaintiff's rights is unnecessary.

8              **M.      Allegations Arising After the Complaint was Filed**

9          Plaintiff brings allegations against Defendants arising in 2010.  Plaintiff may not supplement

10   the complaint with allegations of events occurring after the original complaint was filed, without

11   leave of court, and Plaintiff has not made such request to the Court.  Fed. R. Civ. P. 15(d).

12          When considering whether to allow a supplemental complaint, the Court considers factors

13   such as whether allowing supplementation would serve the interests of judicial economy; whether

14   there is evidence of delay, bad faith or dilatory motive on the part of the movant; whether

15   amendment would impose undue prejudice upon the opposing party; and whether amendment would

16   be futile.  See San Luis & Delta-Mendota Water Authority v. United States Department of the

17   Interior, 236 F.R.D. 491, 497 (E.D. Cal. 2006) (citing Keith v. Volpe, 858 F.2d 467 (9th Cir. 1988),

18   Foman v. Davis, 371 U.S. 178 (1962), and Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400

19   (9th Cir. 1997)).

20          Moreover, Plaintiff may not proceed in one action on a myriad of unrelated claims against

21   different staff members.  "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party

22   asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may

23   join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as

24   the party has against an opposing party.'  Thus multiple claims against a single party are fine, but

25   Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.

26   Unrelated claims against different defendants belong in different suits, not only to prevent the sort

27   of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

28   pay the required filing fees-for PLRA limits to 3 the number of frivolous suits or appeals that any

18

1  prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." <u>George v. Smith</u>,

2  507 F.3d 605, 607 (7th Cir. 2007).

3     Plaintiff is advised that the exhaustion requirement also applies to supplemental claims.

4  Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

5  U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

6  correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

7  § 1997e(a).

8     Accordingly, Plaintiff's allegations in the First Amended Complaint against Defendants

9  arising after the complaint was filed shall be dismissed.  Plaintiff should consider the instructions

10  above before deciding whether to request leave to file a supplemental complaint.

11     **N.**     **Policy Claims**

12     Plaintiff alleges that Defendants Harrington, Castro, and Biter promulgated and implemented

13  policies at KVSP which authorized prison officials to frustrate Plaintiff's attempts to file appeals and

14  remove Plaintiff from his job assignment.  Plaintiff maintains that Defendants' policies authorized

15  defendant Billings to reject Plaintiff's grievances for bogus and arbitrary reasons contrary to CDCR

16  policy and to place Plaintiff on appeal restriction in order to prevent exhaustion of remedies and

17  conceal the fact that drinking water at KVSP was contaminated.

18     In the Court's November 22, 2010 order screening the original Complaint, the Court found

19  that Plaintiff had alleged facts, when liberally construed, that defendants Harrington and Castro

20  implemented a policy responsible for the unconstitutional restriction on his right to file inmate

21  grievances. (Doc. 13 at II.C.)   The Court now screens the policy claims using the <u>Iqbal</u> standard as

22  described above at ¶4.G.

23     Defendants Harrington, Castro and Biter hold supervisory positions at KVSP.  To state a

24  policy claim based on supervisory liability, Plaintiff must allege facts that Defendants personally

25  participated in the alleged deprivation of constitutional rights; knew of the violations and failed to

26  act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is

27  a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

28  ///

1  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880

2  F.2d 1040, 1045 (9th Cir. 1989).

3      Plaintiff has not specified any policy promulgated or implemented by Defendants that

4  authorized constitutional violations against Plaintiff.  It is not enough to allege that a policy

5  authorizes behavior, such as the rejection of appeals, which can be used improperly in a retaliatory

6  manner.  Plaintiff has not alleged facts demonstrating that any policy was a "repudiation of

7  constitutional rights" or "the moving force" of the constitutional violation against him.  Therefore,

8  Plaintiff fails to state a claim against Defendants for the promulgation and implementation of

9  policies that infringe upon Plaintiff's exercise of his First Amendment rights.  In light of the fact that

10 the Court previously found that Plaintiff stated a claim for implementation of policy in the original

11 Complaint, and has now employed the more restrictive Iqbal standard to screen this claim in the First

12 Amended Complaint, Plaintiff shall be granted leave to amend the policy claim to cure the

13 deficiencies found by the Court.

14 **V.      CONCLUSION AND ORDER**

15     The Court finds that Plaintiff's First Amended Complaint fails to state any claims upon

16 which relief can be granted under § 1983 against any of the Defendants.  Therefore, the First

17 Amended Complaint shall be dismissed.  Under Rule 15(a) of the Federal Rules of Civil Procedure,

18 "leave to amend 'shall be freely given when justice so requires.'"  The Court will provide Plaintiff

19 with time to file a Second Amended Complaint to amend only the retaliation and policy claims,

20 curing the deficiencies identified above.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir.2000).

21  The Court finds that the deficiencies outlined above for Plaintiff's other claims are not capable of

22 being cured by amendment, and therefore further leave to amend those claims shall not be granted.

23 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez, 203 F.3d at 1127; Noll v. Carlson, 809 F.2d 1446, 1448-49

24 (9th Cir. 1987).

25     The Second Amended Complaint should be brief, but must state what each named defendant

26 did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Fed. R. Civ. P.

27 8(a); Iqbal, 129 S.Ct. at 1948-49; Jones, 297 F.3d at 934.  Plaintiff is reminded that there is no

28 respondeat superior liability, and each defendant is only liable for his or her own misconduct.  Iqbal,

1   129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is

2   plausible on its face.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also

3   demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297

4   F.3d at 934 (emphasis added).

5        Plaintiff is advised that a short and simple statement of his claim will speed the screening of

6   his case, and will help the litigation proceed in a more efficient manner.  While exhibits are

7   permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal

8   system of notice pleading, Fed. R. Civ. P. 8(a).  Plaintiff is advised that under Rule 8 of the Federal

9   Rules of Civil Procedure, Plaintiff is only obligated to provide "a short and plain statement of [his]

10  claim."  Plaintiff is not obligated to prove the allegations in his complaint at this stage.  Attaching

11  a large number of exhibits to a complaint may result in the complaint being dismissed for failure to

12  comply with Rule 8, as it will render the complaint to be neither a "short" nor "plain" statement of

13  Plaintiff's claims.

14       Plaintiff should also note that although he has been given the opportunity to amend, it is not

15  for the purposes of adding unrelated claims or amending any claims other than the retaliation and

16  policy claims.  In addition, Plaintiff should take care to include only those claims for which he has

17  exhausted his administrative remedies.

18       Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be

19  complete in itself without reference to any prior pleading.  As a general rule, an amended complaint

20  supersedes the original complaint.  See Loux v.  Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an

21  amended complaint is filed, the original complaint no longer serves any function in the case.

22  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

23  of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly

24  titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed

25  under penalty of perjury.

26  ///

27  ///

28  ///

Based on the foregoing, it is HEREBY ORDERED that:

1.     Plaintiff's First Amended Complaint, filed on January 11, 2011, is dismissed for failure to state a claim, with leave to amend only the retaliation and policy claims, as instructed by this order;

2.     All other claims are DISMISSED from this action, without leave to amend;

3.     Plaintiff's official capacity claims, supervisory liability claims, claims for failure to protect, conspiracy, deficient inmate appeals process, violation of rights to due process and equal protection, violations of the ADA and RA, for declaratory and injunctive relief, and claims arising after the date the complaint was filed, are DISMISSED from this action, without leave to amend.

4.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

5.     Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a Second Amended Complaint amending only the retaliation and policy claims, curing the deficiencies identified by the Court in this order, as instructed by this order;

6.     Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:09-cv-01823-GSA-PC; and

7.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.


IT IS SO ORDERED.

**Dated:    September 19, 2011**              _/s/_ **Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE